IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RICHARD FRANK GONZALEZ                                            PLAINTIFF

vs.                                    Civil No. 6:16-cv-06094-BAB

NANCY A. BERRYHILL                                                DEFENDANT
Acting Commissioner, Social Security Administration[1]

**MEMORANDUM OPINION**

Richard Frank Gonzalez ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("The Act").

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 7).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.    Background:**

Plaintiff protectively filed his disability applications for DIB and SSI on March 9, 2011.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

(ECF No. 10, p. 635). Plaintiff also filed a subsequent application for SSI on February 12, 2015, while his March 9, 2011 applications were pending. (ECF No. 10, p. 635). The ALJ consolidated all of Plaintiff's outstanding claims into this single action. (ECF No. 10, p. 635). In his applications, Plaintiff alleges being disabled due to knee injuries, back injury/chronic back pain, depression, schizophrenia, anxiety, hand and arm problems, shoulder problems, stroke, and a heart condition. (ECF No. 10, pp. 226, 871). Plaintiff alleges an amended onset date of March 11, 2011. (ECF No. 10, p. 660). These applications, save the SSI application filed on February 12, 2015, were denied initially and again upon reconsideration. (ECF No. 10, pp. 83-86).

Thereafter, Plaintiff requested an administrative hearing on his denied applications, and this hearing request was granted. (ECF No. 10, pp. 105-06). After this hearing, on February 26, 2013, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 10, pp. 24-45). Plaintiff subsequently filed an appeal with this Court. *Gonzalez v. Colvin*, No. 6:14-cv-06070, 2014 WL 1709313 (W.D. Ark. 2015). The February 26, 2013, decision of the ALJ was reversed and remanded for failure to properly analyze Plaintiff's subjective complaints in accordance with the requirements of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *Id.*

Plaintiff's second administrative hearing was held on December 21, 2015, in Hot Springs, Arkansas. (ECF No. 10, pp. 656-87). Plaintiff was present and was represented by Hans Pullen. *Id.* Plaintiff and VE Myrtle Johnson testified at this hearing. *Id.* At the time of this hearing, Plaintiff was forty-six (46) years old, which is defined as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). (ECF No. 10, p. 660). As for his level of education, Plaintiff earned a GED. (ECF No. 10, p. 661).

After this hearing, on January 22, 2016, the ALJ entered an unfavorable decision denying

Plaintiff's applications for DIB and SSI. (ECF No. 10, pp. 632-48). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through June 30, 2011. (ECF No. 10, p. 637, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since March 11, 2011, his amended alleged onset date. (ECF No. 10, p. 637, Finding 2). The ALJ determined Plaintiff had the following severe impairments: residuals of a cerebral vascular accident, degenerative joint disease of the knees, schizoaffective disorder, and an anti-social personality disorder/intermittent explosive disorder. (ECF No. 10, pp. 638-39, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 10, pp. 639-41, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 10, pp. 641-46, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] is able to lift/carry no more than 20 pounds at a time with frequent lifting/carrying of up to 10 pounds. [Plaintiff] can perform activities that require a good deal of walking or standing, up to six hours during an eight-hour workday. Mentally, he can perform unskilled work, or work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, involves few variables, requires little independent judgment, and the supervision required is simple, direct, and concrete. [Plaintiff] cannot deal with the general public.

*Id*.

The ALJ then determined Plaintiff was unable to perform any Past Relevant Work ("PRW"). (ECF No. 10, pp. 646-47, Finding 6). The VE testified at the administrative hearing regarding this

3

issue. (ECF No. 10, pp. 682-86). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a bander, which has a DOT code of 920.687-026, with approximately six hundred ninety-three thousand (693,000) jobs in the national economy, and as a price tagger, which has a DOT code of 209.587-034, with approximately one million nine hundred thousand (1,900,000) jobs in the national economy.[3] (ECF No. 10, pp. 647-48, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from March 11, 2011, through January 22, 2016, the date of the ALJ's decision. (ECF No. 10, p. 648, Finding 11).

On September 26, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on September 29, 2016. (ECF No. 7). This case is now ready for decision.

**2.** **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision,

---

[3] Plaintiff, in his brief, identified that the ALJ, in his decision, cited an inaccurate representative DOT code for the job of "price tagger." Based upon my review of the ALJ's decision and the VE's testimony at the administrative hearing, I find this a scrivener's error which had no effect on the outcome of the ALJ's unfavorable decision.

the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D). A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his

5

or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. *see Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416(a)(4)(v).

3. **Discussion:**

In his appeal brief, Plaintiff raises the following three arguments for reversal: (1) the ALJ erred in discrediting Plaintiff and the objective findings that establish Plaintiff meets listing 1.02B2(b)(c) and Listing 1.04(C); the ALJ failed to consider all of Plaintiff's physical and mental impairments in combination; and (3) the ALJ improperly discredited the opinions of Plaintiff's treating physicians and gave greater weight to the non-examining state agency consultants. (ECF No. 12).

A. **Listings 1.02B2(b)(c) and 1.04(C)**

The claimant bears the burden of proving his impairment meets or equals the criteria for a specific listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004)(internal quotations and citation omitted). Where the claimant suffers from an unlisted impairment, the ALJ must compare the claimant's impairment with an analogous listed impairment. 20 C.F.R. §§ 404.1526, 416.926. Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006)

6

(internal quotations omitted). While it is preferable an ALJ address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion. *see Pepper ex rel. Gardner v. Barnhart*, 342 F.3d, 853, 855 (8th Cir. 2004), *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011)("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").

The Regulations do not contain a Listing 1.02B2(b)(c) as cited by Plaintiff. I will assume, based on Plaintiff's argument, Plaintiff intends Listing 1.02(B) which requires as follows:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> . . .
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.02(B). Section 1.00(B)(2)(c) defines the inability to perform fine and gross movements effectively as follows:

> c. What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to

> place files in a file cabinet at or above waist level.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.00B(2)(c).

Substantial evidence in the record supports that Plaintiff did not meet the criteria of Listing 1.02(B) because he does not suffer an impairment involving a major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively as defined by the Regulations. The ALJ determined Plaintiff was able to perform household chores, play video games, watch television, manage his finances, and use public transportation, such as a taxi cab. (ECF No. 10, p. 640). Plaintiff stated in his function report that he cared for his two sons every other weekend. (ECF No. 10, p. 267). Although Plaintiff testified he had severe limitation in one shoulder, a consultative examination on July 21, 2015, showed the forward elevation of Plaintiff's left shoulder was restricted to ninety degrees, but the rest of Plaintiff's range of motion examination was within normal limits. (ECF No. 10, p. 1065). Plaintiff was given an injection on February 4, 2015 and was referred to an orthopedist, but the record does not indicate Plaintiff sought any further treatment for his shoulder pain. (ECF No. 10, p, 977). Ultimately, the ALJ determined Plaintiff's alleged shoulder impairment resulted in only minimal limitations, which is supported by substantial evidence in the record as a whole. (ECF No. 10, p. 638).

Plaintiff also contends he met the requirements of Listing 1.04(C). Listing 1.04(C) requires the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> . . .

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.04(C). Section 1.00(B)(2)(b) is not a listing in and of itself, but defines what the regulations mean by a claimant's inability to ambulate effectively for purposes of determining whether a claimant meets the criteria of Listing 1.04. The regulation states:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.00(B)(2)(b).

Substantial evidence in the record supports that Plaintiff did not meet the criteria of Listing 1.04(C) because he is able to ambulate effectively. For example, physical examination of Plaintiff by the consultative examiner on July 21, 2015, revealed Plaintiff had an antalgic gait slightly favoring his right leg, but that he could stand and walk without assistive devices, walk on his heels and toes, squat and arise from a squatting position. (ECF No. 10, p. 1067). Plaintiff also had a

9

negative Romberg's test, his proprioception and tandem walk were good, and he exhibited no tremor, cogwheel rigidity, or bradykinesis. *Id.* Substantial evidence in the record as a whole supports the ALJ's determination that Plaintiff did not meet the criteria of Listing 1.04(C), even where, as here, the ALJ did not specifically address Listing 1.04(C) in his decision.

Plaintiff contends the ALJ could only reach the determination that Plaintiff did not meet a listing because the ALJ improperly assessed Plaintiff's credibility. I disagree, and find that the ALJ's determination that Plaintiff did not meet the criteria of one of the Listings was supported by substantial evidence in the record as a whole. Nevertheless, to the extent Plaintiff has argued the ALJ's assessment of Plaintiff's credibility was improper, I find the ALJ conducted a proper analysis as required by Eighth Circuit law and the Regulations. In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529.[4] *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *see Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *see Id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints.

---

[4] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

*see Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *see Id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *see Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain Plaintiff experiences precludes the performance of substantial gainful activity. *see Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

The ALJ properly applied these factors articulated in *Polaski* and gave several good reasons for finding that Plaintiff's subjective complaints were not entirely credible. First, the ALJ determined Plaintiff had only a mild limitation in his activities of daily living. (ECF No. 10, p. 640). Second, the ALJ noted Plaintiff's complaints during the relevant period treated were with a combination of medication and therapy, and that he did not establish suffering any sufficient side effects from medication use. (ECF No. 10, pp. 644-45). *see Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Plaintiff even completed a from for "Pain and Other Symptoms" on October 31, 2011, and identified the medications he was taking for his pain and other symptoms as, "none."

11

(ECF No. 10, p. 265).

I find substantial evidence supports the ALJ's credibility assessment and because the ALJ provided multiple valid reasons for discounting Plaintiff's subjective complaints, I defer to the ALJ's credibility determination. *see Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (this Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

### B. Impairments in Combination

Plaintiff argues the ALJ failed to consider all of Plaintiff's impairments in combination. The ALJ specifically considered Plaintiff's impairments in combination where the ALJ determined Plaintiff's combination of impairments did not meet or medically equal the severity of one of the impairments in the Listings and when the ALJ made his RFC determination, "[having] considered all symptoms," and "[a]fter careful consideration of the evidence." (ECF No. 10, pp. 641, 643); *see* Hajek v. *Shalala,* 30 F.3d 89, 92 (8th Cir. 1994) (ALJ properly considered combined effects of a claimant's impairments where ALJ determined the claimant did not have an impairment or combination of impairments that rendered him disabled as defined by the Act); *see also Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1993) (ALJ properly considered combined effects of a claimant's impairments where ALJ separately discussed claimant's physical impairments, mental impairments, complaints of pain, and daily activities). Plaintiff contends that the ALJ should have considered the fact that Plaintiff had suffered gunshot wounds in each knee. (ECF No. 12). Plaintiff's argument is moot, however, because the ALJ determined Plaintiff's degenerative joint disease of the knees was a severe impairment and accounted for all of Plaintiff's functional limitations of the knees regardless of the cause. I note that in formulating Plaintiff's RFC, the ALJ

fully summarized all of Plaintiff's medical records and separately discussed each of his alleged impairments. Based on the ALJ's synopsis of Plaintiff's medical records and discussion of each of his alleged impairments, I conclude that the ALJ properly considered the combined effects of Plaintiff's impairments, even those which the ALJ determined were non-severe. *see Martise v. Astrue,* 641 F.3d 909, 924 (8th Cir. 2011).

C. **Medical Opinions**

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 416.927(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id.* "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 416.927(c)(2).

In the present case, Plaintiff argues the ALJ improperly rejected the opinions of Plaintiff's treating physicians. (ECF No. 12, pp. 17-18). Plaintiff named only one specific physician, Dr. Daniel Irons, and his identification of Plaintiff's "disruption of the inferior labrum of the glenoid." (ECF No. 12, p. 18). The ALJ gave partial weight to Dr. Irons. The ALJ agreed that Plaintiff would have moderate lifting restrictions and mild walking limitations, but that Plaintiff's right arm impairment did not result in more than minimal limitations. (ECF No. 10, p. 645). I note that a mere diagnosis

13

is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis, and that the ALJ's RFC determination is largely consistent with Dr. Irons' opinion. *see Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

The ALJ's RFC determination must be based on *all* relevant evidence in the record, not simply one consulting physician's opinion, despite the weight the ALJ affords the opinion. *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). I note that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of many physicians, specialists, examining consultants, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); *Prosch v. Apfel*, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the foregoing, I find the ALJ did not commit error by assigning Dr. Irons' opinion partial weight. Moreover, I find substantial evidence in the record as a whole supports the ALJ's RFC determination.

**4. Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 26th day of June 2017.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE